**SHIPLEY v. DALLAS COUNTY LEVEE IMPROVEMENT DIST. NO. 6.**
(No. 8547.)

(Court of Civil Appeals of Texas. Dallas. June 4, 1921. Rehearing Denied July 2, 1921.)

**1. Appeal and error ⬲759—Fundamental error considered, although brief is defective.**

Although appellant's assignments of error are not copied in his brief, the trial court's fundamental error in overruling a general demurrer will be considered, and special exceptions overruled by the trial court *held*, in effect, but general demurrers.

**2. Eminent domain ⬲167(1)—Condemnation by levee district must be under railway statute.**

Under provision of Acts 4th called Sess. 1918, c. 44, relating to levee improvement districts, the board of district supervisors appointed by the district and the commissioners of appraisement appointed by such supervisors have no power to condemn land for the purpose of the district without complying with Vernon's Sayles' Ann. Civ. St. 1914, art. 6505 et seq., relating to condemnation by railroads; the levee statute being merely intended to appoint commissioners of appraisement for taxation purposes, and no appeal from their finding, no means of enforcing award to landowner, and no notice except as to hearing objections to report as to benefits and damages being provided.

**3. Appeal and error ⬲1—Right of appeal not absolute.**

The right of appeal may not be one of absolute right unless given by express terms, and a litigant may be deprived of such right by legislative enactment.

**4. Constitutional law ⬲251—Eminent domain ⬲69—No deprivation of property except by due process and with compensation.**

It is elementary that no one shall be deprived of his property except by due process of law, and that private property shall not be taken for public use without just compensation.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Suit for injunction by the Dallas County Levee Improvement District No. 6 against L. G. Shipley. Judgment for plaintiff, and defendant appeals. Reversed, injunction dissolved, and case dismissed.

Ross M. Scott and Rasbury, Adams, Stennis & Harrell, all of Dallas, for appellant.

Clark & Clark and E. E. Hurt, all of Dallas, for appellee.

TALBOT, J. The appellee, Dallas county levee improvement district No. 6, a duly organized levee improvement district under the law of this state, instituted this suit on the 17th of June, 1920, against the appellant, L. G. Shipley, to enjoin him from interfering with, molesting and preventing the appellee from constructing its levee upon and over two tracts of land owned by the appellant and claimed to have been duly condemned for that purpose, and to restrain the appellant from interfering with or preventing the appellee from "constructing any part of its said levee district, in accordance with its lawful plan of reclamation." The appellee's petition alleged, in substance:

That it is "a governmental agency and body politic and corporate, duly organized under chapter 44 of the Fourth Called Session of the Legislature of 1918, as authorized and directed by the constitutional amendment of 1917, being section 59 of article 16 of the Constitution; that under and by virtue of said amendment and said act, known as the 'Laney Act,' appellee became a conservation and reclamation district of Texas designated and known as 'a levee improvement district' for the purpose of constructing and with the power and authority to construct and maintain levees on, along, and contiguous to rivers, creeks, and streams, with the view of reclaiming lands from overflows of such streams and for the proper drainage thereof; that the right of eminent domain is expressly conferred upon the appellee by the statute enacted under the conservation amendment to the Constitution mentioned, for the purpose of enabling the district to acquire the fee-simple title, easement, or right of way to, over, and through any and all lands, waters, etc., adjacent or opposite to the district, necessary for its purposes."

It is further alleged that the appellee, in accordance with sections 19 and 24 of the act of the Legislature in question, condemned the right of way over and through the lands of the appellant described in its petition; that the board of district supervisors of the improvement district, as provided by the law upon the subject, appointed three commissioners of appraisement, who duly qualified, to condemn any and all of the land taken by the levee district and to assess the amount of all damages and the benefits that would accrue to any land taken, damaged, or destroyed, or included within the levee district, by carrying out and putting into effect the plan of reclamation for said district; that the commissioners of appraisement performed the services and duties imposed upon them in accordance with the provisions of

⬲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

said law and duly made a proper report on September 17, 1919, of their findings, as provided by said law, showing the lands and the owners of each and every piece of property pertaining to the levee district and on or concerning which all assessments would be made, together with such description of said property as to identify the same, with the amount of damages and all benefits assessed for and on account of or against the same, as well as the value of all property to be taken or acquired by right of way or other purpose, connected with the carrying out of the plan 'of reclamation as finally approved by the state reclamation engineer, which report they duly filed with the secretary of the board of supervisors, as provided for and required by section 21 of said chapter 44. It is alleged that the commissioners of appraisement appointed by the supervisors of the levee district fixed in their said report the time and place when and where they would hear exceptions and objections thereto by the landowners affected, and that the notice required of such hearing was given: that the commissioners of appraisement on the day set met at the appointed place and gave the landowners an opportunity to be heard; that many of them, including the appellant, filed pleadings setting forth severally their objections and exceptions to said report, and that upon the issues of fact and law arising thereon the commissioners of appraisement gave each of the parties a fair, full and impartial trial, as provided by law, after which they rendered a final decree and judgment condemning 2.01 acres of appellant's land for the right of way sought by the appellee, allowing him therefor $201 for the land taken, and assessing his damages to 27.51 acres affected at $660, and assessing his benefits to the remaining 15 acres within the levee reclaimed and protected from overflows at $950. Appellee further alleged that notwithstanding this judgment of condemnation was in all things regular, fair, and legal, and under said statutes entitled appellee to the right to take possession of said right of way and build its levee on and over the same, upon paying to appellant the sum of money due him by said judgment of condemnation, and notwithstanding appellee tendered the same to him and urged him to accept it and not delay or seek to defeat its building its levee, yet the appellant refused and still does refuse to accept the same, and did wrongfully and unlawfully interfere with, molest, and prevent, by unlawful force and violence, appellee, its supervisors, contractors, employés, agents, and servants, from going on said right of way and from building said levee and the construction of said levee district, and will at once, by unlawful and wrongful force and violence and threats, stop the building of said levee and the construction of said district, for that such a gap in said levee would be caused by skipping appellee's said two tracts of land as would

destroy the entire levee district, for the building of which appellee has issued and sold $220,000 of its bonds, as provided for by said statutes, and has the proceeds thereof in the Dallas Trust & Savings Bank, and was ready and able to build and was lawfully spending said $220,000 in the construction of said levee district; that appellee was helpless to protect itself against appellant's wrongful and unlawful acts aforesaid, except by the use of unlawful force and violence and by breaching the peace and that, unless appellant was enjoined, his said unlawful and wrongful acts would result in immediate, great, and irreparable injury and damage to appellee and the many landowners interested in the construction of said levee district, to prevent which appellee had no adequate remedy at law.

Appellee paid into court the said amount due appellant on said judgment of condemnation, and prayed for a temporary writ of injunction pending this suit, and that the same be perpetuated on the final hearing hereof, and for costs of suit and general relief. The petition was duly verified by appellee, and the temporary injunction prayed for was granted. Appellant, by his first amended original answer, pleaded a general demurrer and special exceptions, in part, as follows: To the paragraph of the petition alleging the appointment of three commissioners of appraisement by the board of supervisors to condemn the land he excepted (1) because the law does not confer upon said commissioners of appraisement the authority or power to condemn the land; (2) because there is no law conferring any such power upon the board of supervisors to appoint commissioners of appraisement with power to condemn and take land for said levee district; (3) because the condemnation proceedings to be followed are those prescribed "by articles 6507 and 6508 of Vernon's Sayles' Civil Statutes, and not section 19 et seq., followed by appellee." To paragraphs 7 and 8 of the petition, alleging that a final report, judgment, and decree of condemnation was rendered by said commissioners of appraisement, he excepted for the reason (1) that the act authorizing the creation of levee districts did not empower or authorize the said board of appraisement to render any such judgment, or any judgment at all condemning land, and that said act only authorized said board of appraisers to assess damages and benefits accruing to the land by virtue of the establishment of levee improvement districts; (2) because "the appointment of the commissioners of appraisement by the board of supervisors was an ex parte appointment and was therefore void; (3) because the petition does not allege that the plaintiff and the defendant failed after an effort to agree, or failed to agree, upon the value of the land sought to be condemned; (4) because the petition fails to allege that plaintiff has paid or se-

cured to be paid to the defendant the value of the land sought to be condemned. The record fails to show that the appellant appeared and filed objections to the report of the commissioners of appraisement.

After the special exceptions, appellant pleaded a general denial and a special answer, which need not be stated. The case came on for trial regularly before the court without a jury, and the trial resulted in the court overruling appellant's general demurrer and special exceptions, and rendering judgment in favor of appellee, on September 24, 1920, perpetuating and making permanent the temporary injunction granted against him when the suit was filed.

[1] The record discloses that the appellant filed assignments of error in the district court, but neither of them has been copied in his brief. For this reason the appellee objects to a consideration of the brief; asserts that it should not be considered and that the judgment of the trial court should be affirmed. It may be conceded that the brief is so imperfect, for the reason stated, that it should not be considered, but we are of opinion that the court in overruling the appellant's demurrer and rendering judgment in favor of the appellee, committed fundamental error. In other words, we think the error complained of and involved in the appeal is one apparent on the face of the record and requires a review of the court's action. The overruling of a general demurrer, as was done in this case, if such action is improper, is fundamental error. In the instant case the special exceptions urged by the appellant and overruled by the court are, in effect, but general demurrers specifically pointing out the reasons why it should be held that the appellee's petition failed to show a cause of action for the relief sought.

[2] The respective contentions of the parties may be summed up as follows: The appellant contends that the right of a levee improvement district in this state to condemn land necessary for constructing and maintaining levees and other improvements to prevent overflows, under the provisions of chapter 44 of the Fourth Called Session of the Legislature of 1918, and the method to be pursued therefore, is controlled by article 6506 of Vernon's Sayles' Civil Statutes, and that if the method prescribed in that article is not followed any other method of condemnation would be void and of no effect. The appellee contends, in effect, that under the act in question the power to condemn land necessary for the purposes of the levee district is conferred upon the commissioners of appraisement appointed by the board of appraisers independently of the method directed to be followed by section 9 of the statute, and that it is unnecessary to file a statement with the county judge as is provided in article 6506 of Vernon's Sayles' Civil Statutes. These contentions suggest very clearly the issue of law between the appellant and the appellee and to be decided on this appeal. The discussion of able counsel representing the parties has taken a wider range than we regard as necessary in determining the question presented, and we shall not undertake to follow them in such discussion. The question is: Has the board of district supervisors appointed by the levee improvement district, or the commissioners of appraisement appointed by such supervisors, acting for the district, power or authority to condemn land for the purposes of the improvement district, without complying with the statutes of this state for condemning and acquiring of right of way by railroad companies? We think the question should be answered in the negative. Section 9 of the act of the Legislature passed in 1918, providing for the creation of conservation and reclamation districts within this state to be known as "levee improvement districts," reads as follows:

"The right of eminent domain is hereby expressly conferred upon all levee improvement districts established under the provisions of this act, for the purpose of enabling such districts to acquire the fee-simple title, easement or right of way to, over and through any and all lands, waters, or lands under waters, private or public (except land and property used for cemetery purposes), within, bordering upon, adjacent or opposite to such districts, necessary for making, constructing and maintaining all levees and other improvements for the improvement of a river or rivers, creek or creeks, or streams, within or bordering upon such districts, to prevent overflows thereof. In the event of the condemnation, or the taking, damaging or destroying of any property for such purposes, the improvement district shall pay to the owner thereof adequate compensation for the property taken, damaged or destroyed. All condemnation proceedings or suits in the exercise of eminent domain under this act shall be instituted under the direction of the district supervisors, and in the name of the levee improvement district, and all suits or other proceedings for such purposes and for the assessing of damages, and all procedure with reference to condemnation, the assessment of and estimating of damages, payment, appeal, the entering upon the property pending the appeal, etc., shall be in conformity with the statutes of this state for the condemning and acquiring of right of way by railroad companies, and all such compensation and damages adjudicated in such condemnation proceedings, and all damages which may be done to the property of any person or corporation in the construction and maintenance of levees or other improvements under the provisions of this act shall be paid out of any funds or properties of said levee improvement district, except taxes necessarily applied to the payment of the sinking fund and the interest on the district bonds.".

This provision of the statute plainly and unmistakably says that all procedure with reference to condemnation, the assessment of

and estimating of damages, payment thereof, and entering upon the property, etc., shall be in conformity with the statutes of this state for the condemning and acquiring of right of way by railway companies; and, looking to the provisions of the statute which declare the procedure to be observed by railway companies in condemning land for right of way or other named purposes, we find that article 6505 of Vernon's Sayles' Civil Statutes provides:

"No railroad company shall enter upon, except for a lineal survey, any real estate whatever, the same being private property, for the purpose of taking and condemning the same, * * * until the said company shall agree with and pay the owner thereof all damages that may be caused to the lands and property of said owner by the condemnation of said real estate and property. * * *"

Article 6506 provides:

"If such company and said owner cannot agree upon the damages, it shall be the duty of said company to state in writing the real estate and property sought to be condemned, the object for which the same is sought to be condemned, the name of the owner thereof and his residence, if known, and file the same with the county judge of the county in which such property, or a part thereof, is situated; provided, if the owner resides in either county in which a portion of the land is situated, the same shall be filed in the county of his residence."

Following this article of the statute are articles providing for the appointment of commissioners by the county judge to assess damages; providing that the commissioners shall be sworn to assess the damages fairly and impartially; requiring the commissioners to appoint a day for hearing the parties and the giving of notice of such hearing; defining the power of the commissioners, the hearing of evidence as to the value of the property sought to be condemned, and as to the damages which will be sustained by the owner by reason of such condemnation, and as to the benefits that will result to the remainder of the property by the construction and operation of such railroad. Article 6522 provides that—

"When the said commissioners shall have assessed the damages, they shall reduce their decision to writing, stating therein the amount of damages due to the owner of such real estate, if any be found to be due, and shall date the same and sign it, and shall file the said assessment, together with all other papers connected with the case, with the county judge without delay."

Article 6527 provides that, in the event either party is dissatisfied with the decision of the commissioners, he may, within the time prescribed, file his opposition thereto in writing, setting forth the particular cause or causes of his objection, and thereupon the adverse party shall be cited and the cause tried and determined as in other civil cases in the county court. If, however, no objections are filed to the decision of the commissioners within the time allowed, the county judge shall cause the decision to be recorded in the minutes of his court, and shall make the same the judgment of said court, and may issue the necessary process to enforce the same. As will be observed, section 9 of the statute, copied above, confers the right of eminent domain upon levee improvement districts for the purposes named, coupled with the condition imposed that in the exercise of such right the procedure with reference to condemnation, the assessment of and estimating of damages, payment, appeal, the entering upon the property pending the appeal, etc., shall be in conformity with, or as required by, the statutes of this state for condemning and acquiring of right of way by railroad companies. Such a procedure makes a complete method of condemnation, securing to each party a full and fair hearing in a trial court, with the right of appeal given to a higher tribunal for a review of its action, which was evidently the purpose of the Legislature in conferring the right of eminent domain upon levee improvement districts. This recognizes the rule of interpretation that the same power which confers a right must also prescribe a method by which that right may be exercised. If we ignore the provisions of the statute prescribing the manner of condemning and acquiring of land and right of way by railroad companies, and allow such condemnation, taking of property, and assessing of damages by a compliance with the provisions of section 19 et seq. of chapter 44 of the act of 1918, as the appellee claims the right to do and attempted to do, then such a full, fair, and complete method by which the right of eminent domain may be expressed is not accorded the owner of the land. If by such method the owner is deprived of no other right vouchsafed by the procedure with reference to condemnation and acquiring of right of way by railroad companies, it is thereby deprived of the very valuable right of appeal. For by one of the sections of the act under which the appellee claimed the right to condemn and take the land of the appellant, namely, section 23, it is declared that when the commissioners of appraisement appointed by the district supervisors of the levee district shall have finally acted they shall make decree confirming the report theretofore made by them, and that the findings of such commissioners as to benefits and damages to lands, railroads, and other real property within the district "shall be final and conclusive."

[3] While the right of appeal may not be one of absolute right unless given by express terms, and a litigant may be deprived of such right by legislative enactment, still the procedure marked out by the statutes of this

233 SOUTHWESTERN REPORTER (Tex.

state for the condemning and acquiring of right of way by railroad companies and the assessment of and estimating of damages that may accrue by reason of the building of a railroad over and across a man's land gives the right of appeal; such right is denied by the method of condemnation invoked by the appellee. By several provisions of the act of 1918, authorizing the creation of levee improvement districts and conferring upon them the right of eminent domain, it is provided that when such district has been created the court creating the same shall appoint three supervisors for such district, who in turn, upon the adoption of the plan of reclamation, shall appoint three disinterested commissioners, to be known as "commissioners of appraisement"; that it shall be the duty of the commissioners to meet at a time and place specified, and each shall take and subscribe an oath that they will faithfully and impartially discharge their duties as such commissioners and make true report of the work done by them; that within 30 days after qualifying and organizing the commissioners shall begin their duties; that they shall proceed to view lands within such district which shall be affected by the plan of reclamation for such district, and all such lands without the district as may be acquired for any purpose connected with or incident to the carrying out of such plan; that they shall "assess the amounts of benefits and all damages, if any, that will accrue to any tract of land within such district as the result of carrying out and putting into effect the plan of reclamation for such district; that they shall prepare a report of their findings, which shall show the owner of each piece of property examined, with such description thereof as may identify the same, and stating the amount of damages and all benefits assessed for or against the same, as well as the value of all property to be taken or acquired for right of way or any other purpose connected with the carrying out of the plan of reclamation as approved by the state reclamation engineer; that they shall fix in such report a time and place when and where they will hear objections thereto; that when the report of the commissioners shall have been filed with the secretary of the board of supervisors he shall give notice for two consecutive weeks prior to the date fixed for such hearing of the time and place thereof, stating in substance, that the report of the commissioners to assess benefits and damages accruing to the land and other property by reason of the plan of reclamation has been filed and that all persons interested may examine the same and make objections thereto; and that any owner of land or other property affected by such report or plan of reclamation may file exceptions, and the commissioners, at the time and place specified in the notice, shall proceed to hear and pass upon all such objections, and the commissioners shall have

power to adjudge and apportion costs incurred upon the hearing. The findings of the commissioners as to benefits and damages to lands and other real property within the district shall be final and conclusive, and the final decree and judgment of the commissioners shall be entered of record in the minutes of the board of supervisors, and certified copies thereof shall be filed with the county clerk of each county in which any portion of the lands within such district are located as a permanent record of such county, and such filing shall be notice to all persons of the contents and purposes of such decree.

Without going into minute details, we have stated the provisions of the statute relied on and followed by the appellee in attempting to condemn the appellant's land and in assessing the damages awarded him and the benefits which the commissioners of appraisement adjudged would accrue to him by reason of putting into effect the reclamation plan of levee improvement district. No provision appears to have been made for the enforcement of such judgment and decree by any process of the county court, or other means, unless the power given to do the things mentioned in the sections of the statute referred to vests in the officers of the levee district authority to execute themselves its decrees. Not so in case of condemnation according to the procedure marked out by the statutes for condemning and acquiring of right of way by railroad companies. As very clearly evidencing the purpose of the provisions of the statute relied on and attempted condemnation of the appellant's land, we find that section 24 declares:

"After the action of the commissioners of appraisement, as aforesaid, their final findings, judgment and decree, until lawfully changed or modified, shall form the basis of taxation within and for the levee improvement district for which they shall have acted for all purposes for which taxes may be levied by, for or on behalf of such district, and all taxes shall be apportioned and levied on each tract of land, railroad and other real property in the district in proportion to net benefits to the property named in such final judgment or decree, as shown thereby."

Manifestly the purpose of providing for the appointment of commissioners of appraisement, prescribing the procedure to be followed by them in doing the things enjoined upon them, and requiring a report of their findings to be made and filed with the county clerk as a permanent record of the county, as declared in the above-quoted sections of the statute was to form the basis of taxation within and for the levee improvement district, and not for the purpose of providing a method for condemning lands necessary for the construction and maintenance of levees and other improvements essential to the carrying out of the object of its creation. Clearly it was not the intention of the Legislature,

it occurs to us, to confer the power of condemnation upon the commissioners of appraisement, but simply the power to ascertain and determine the value of lands to be taken under condemnation proceedings provided for in section 9, and to assess damages and benefits to be used as indicated as a proper basis of taxation for all the land comprising the improvement district. The duty imposed upon the commissioners is simply to view the lands within the district, and "assess the amounts of benefits and damages that will accrue to any tract of land within the district," etc., "from carrying out and putting into effect the plan of reclamation for such district"; and the notice required to be served on the landowner informing him that the commissioners will at the time and place fixed by them hear objections to their findings simply notifies him that the report of the commissioners "to assess benefits and damages to the land has been filed." He is not apprised thereby that the purpose of the hearing involves the condemnation or taking of his land in such way as to deprive him of its possession and use.

[4] It is elementary that no one shall be deprived of his property except by due process of law, and that private property shall not be taken for public use without just compensation. The sections of the statute under which the appellee acted in seeking to condemn the appellant's lands make no adequate provision, it seems to us, for the enforcement of the payment of such amount as may be awarded the landowner for property taken or damaged in accomplishing the objects of the levee district, and hence are imperfect and insufficient as a fair and efficient condemnation statute. On the other hand, the condemnation proceedings directed to be observed in section 9 of the statute, for condemning and acquiring of right of way by railway companies, is full, fair, and adequate for the ascertainment and protection of all the rights of either party to such a proceeding.

We conclude that the right of the appellee to condemn land and the method to be followed in so doing and in assessing of damages, etc., are controlled by the statutes relating to the condemnation of right of way by railway companies, and that, since the appellee by its petition conclusively shows that such method was not observed by it, but that another and materially different method was followed, no right to the relief asked for and obtained by it in the district court is shown; that the appellee's petition was obnoxious to a general demurrer; and that the judgment of the court should be reversed, the injunction dissolved, and the case dismissed. It is therefore accordingly so ordered.

Judgment reversed, injunction dissolved, and case dismissed.