**TEXAS CO. v. HONAKER et al. (No. 11615.)***

(Court of Civil Appeals of Texas. Fort Worth. Feb. 13, 1926. Rehearing Denied March 27, 1926.)

**1. Appeal and error** ⊂⟹78(1).

Order that defendant or its agents produce certain documents before notary taking depositions is interlocutory, and not appealable.

**2. Appeal and error** ⊂⟹66.

Right of appeal from interlocutory order is not guaranteed by Constitution.

**3. Injunction** ⊂⟹1.

Injunction cannot be maintained merely as method of prosecuting appeal from judgment or order, which court had jurisdiction to make and which is not appealable.

**4. Injunction** ⊂⟹114(3)—Sheriff and notary public acting purely in official capacity, held not necessary parties to petition for injunction against enforcement of court's order.

In suit to enjoin execution of court's order, secured by plaintiff, requiring production by defendant or its agents of certain documents for deposition purposes, sheriff and notary public before whom depositions were to be taken, and who were acting in purely official capacity, held not necessary parties.

**5. Motions** ⊂⟹64.

Order requiring defendant or agents to produce certain documents held res judicata of suit by defendant to enjoin enforcement of order.

**6. Constitutional law** ⊂⟹42—Objection that order requiring corporation or employés to produce records violates constitutional rights of employés not parties to suit is not available to the corporation.

Order requiring defendant corporation or its unnamed employés to produce records before notary for purposes of deposition held not subject to attack by corporation, on ground that constitutional right of employés was violated.

On Motion for Rehearing.

**7. Motions** ⊂⟹64—Order of court having jurisdiction of subject-matter and parties is not void, even if erroneous, and enforcement cannot be enjoined (Const. U. S. Amend. 14; Const. Tex. Bill of Rights, § 9).

Where court has jurisdiction of subject-matter and parties of application, its order therein is not void, even if violative of constitutional rights under Const. U. S. Amend. 14, and Const. Tex. Bill of Rights, § 9, and therefore enforcement cannot be enjoined.

**8. Depositions** ⊂⟹34—Agents of defendant corporation held not necessary parties to application for order that corporation or agents appear before notary with documents to testify.

In application to require defendant corporation or its agents to appear before a notary with certain documents to give, testimony, agents of corporation having no interest in suit held not necessary parties.

Appeal from District Court, Wichita County; Guy Rogers, Judge.

Suit for injunction by the Texas Company against Mrs. Jane Belle Honaker and others. Judgment for defendants, and plaintiff appeals. Affirmed.

H. S. Garrett, of Fort Worth, and Carrigan, Britain, Morgan & King, of Wichita Falls, for appellant.

Beall, Worsham, Rollins, Burford & Ryburn, of Dallas, for appellees.

DUNKLIN, J. In the year 1910 W. B. Honaker, joined by his wife, Mrs. Jane Belle Honaker, executed and delivered to the Tex-

as Company an oil and gas lease upon six tracts of land situated in the producing field in Wichita county. About the same time Honaker and wife executed a similar oil and gas lease to two other tracts adjoining those mentioned above to W. P. Herron and wife, Beulah A. Herron, J. R. Holsonbake and wife, Mrs. Willie Holsonbake, J. C. Stewart and wife, Mrs. Vivian Stewart, and Myrtle Honaker. The married women made grantees in that lease and Myrtle Honaker were the children of the lessors, and the consideration for that lease was love and affection. Shortly thereafter, and on October 31, 1910, said lessees in the last instrument transferred and assigned their lease to the Texas Company. The eight tracts mentioned above aggregated 2,386¼ acres.

On August 7, 1925, Mrs. Jane Belle Honaker, as surviving wife of W. B. Honaker, deceased, and Mrs. Vivian Stewart, Mrs. Willie Holsonbake, Mrs. Beulah A. Herron, Mrs. Myrtle McNew, née Myrtle Honaker, as the sole surviving heirs of W. B. Honaker, deceased, joined by their respective husbands, instituted a suit against the Texas Company in the district court of Wichita county. The first count in their petition was in the usual form of trespass to try title. In other counts plaintiffs sought a cancellation of the leases mentioned above and also for damages, based upon alleged breaches of several obligations which plaintiffs alleged were assumed by the defendant by the terms of the leases.

The alleged breaches of contract by the defendant consisted chiefly of a failure to develop with reasonable diligence the land for oil and gas production by drilling a sufficient number of wells thereon, and the failure to drill sufficient offset wells, in order to prevent the drainage of oil from the land in controversy by wells drilled on other contiguous tracts of land. In that connection it was alleged that, for want of specific information, which was within defendant's knowledge, plaintiffs were unable to allege the number of wells drilled by defendant, the particular locations thereof, which of said wells were now producing, and the amount of production of each, the number of dry wells, etc.

The defendant filed an answer to that petition, denying generally the allegations contained therein; also demurring to the sufficiency of those allegations to require the defendant to file an answer at all.

In December, 1925, counsel for plaintiffs caused to be served upon counsel for defendant a notice that the oral depositions of the witnesses J. O. McMahon and Earl Clayton, both residing in Wichita Falls, in the county of Wichita, would be taken on December 28, 1925. Plaintiffs also secured the issuance by the clerk of the court of a commission to take such depositions, which commission was placed in the hands of Renne Allred, Jr., a notary public. The notary is-

sued a subpœna duces tecum, addressed to the sheriff or any constable of Wichita county, commanding him to summon the witnesses named to appear before the notary on December 28th, then and there to give their depositions in answer to questions propounded on oral examination by counsel for the parties. The subpœna also required the witnesses, and each of them, to produce before the notary at the time and place fixed the following records kept by the Texas Company:

"(1) The records of the Texas Company, showing the number of oil wells drilled by the defendant on the land covered by the Honaker lease to the Texas Company, described in plaintiff's petition, and upon each of the tracts of land in said lease described in said petition.

"(2) The records of said company, showing the date when each well was commenced and finished on said Honaker lease, described in plaintiff's petition.

"(3) The maps belonging to defendant, showing the lands included within the Honaker lease, described in plaintiff's petition, and showing therein accurately the wells drilled by the defendant company, and showing the relative locations of same.

"(4) The logs of each of the wells drilled by the Texas Company on the said lands covered by the Honaker lease.

"(5) The records of said company, showing the amount of oil produced by each of said wells, and showing such production chronologically.

"(6) The records of said company, showing the number of dry holes drilled on said Honaker lease and the location of same.

"(7) The records of the defendant, showing that lands are held by the defendant under lease, and which adjoin the lands included in the Honaker lease.

"(8) The records of the defendant, showing the number and location of wells on leases held by it adjoining the Honaker lease.

"(9) The records of said company, showing the date when each of the wells was drilled on land adjoining the Honaker lease, and showing the complete records of such adjoining wells.

"(10) The logs of the wells on land adjoining the Honaker lease, and within 1,000 feet of any part of said Honaker lease, and the lands included within it.

"(11) The subsurface maps of the lands covered by the Honaker lease and in possession of the defendant, or heretofore prepared by it, and all such subsurface maps of the defendant covering the said Honaker lease, or any part of same."

The witnesses named responded to the summons by the notary, and were examined by counsel for plaintiffs and defendant upon oral interrogatories propounded. They declined to answer several of the questions, because of the fact that the matters inquired about were matters contained in documents included within the defendant's files, which the witnesses did not have in their possession at the time the depositions were taken, and upon the ground that the same were privileged communications, and upon the further ground that the witnesses were unable from

memory to testify about those facts. In answer to further questions, it was developed that Mr. McMahon, who was the manager of the Texas Company in the producing department in North Texas, with headquarters at Wichita Falls, had turned over the records referred to in the questions propounded to him by plaintiffs' counsel to Mr. H. S. Garrett, attorney for the defendant company. The other witness, Earl Clayton, was secretary to the manager, Mr. McMahon, in the producing department of the North Texas division of the defendant company, and had held that position since the year 1919.

Plaintiffs then filed with the papers in the suit which had been theretofore instituted an application to the presiding judge of the court for an order requiring the said witnesses to produce the records described in the subpœna duces tecum before the notary public at a time to be fixed by the court, to be used and introduced in connection with the taking of said depositions. The defendant company filed an answer to that application, resisting the same on divers and sundry grounds, including the following: That the notary was without lawful authority to issue a subpœna duces tecum; that the records called for were not in possession of the witnesses, and therefore the witnesses could not produce them; that the records were privileged and confidential communications, made to counsel for defendant, who had come into possession of them after his employment, and was entitled to retain the same, to the end that he might properly represent the defendant as his client in the defense of the suit; that the subpœna duces tecum and the motion before the court constituted a mere fishing expedition on the part of plaintiffs, and an attempt to require the defendant to disclose to the plaintiffs before trial information within the defendant's possession; and that for the court to compel the production of the same would be to deprive the defendant of rights, privileges, and immunities guaranteed to it by the law of the land, and would be a taking of its property without due process of law, contrary to the Constitution. The defendant resisted the application upon the further ground that the information desired by the plaintiffs and called for in the subpœna duces tecum would be inadmissible, because the same would be hearsay testimony, and would be mere conclusions of the witnesses, and for the further reason that the plaintiffs already have knowledge, or means of knowledge, of the facts sought to be elicited.

That application was heard by the trial court in due order, counsel for both parties appearing. Upon the conclusion of the hearing the court made an order reading as follows:

"It is therefore ordered, adjudged, and decreed that the Texas Company, its agents, servants, and employés, be and they are hereby

required to produce before Renne Allred, a notary public of Wichita county, Texas, at 9 o'clock a. m., January 7, 1926, the following records, maps, and instruments, to wit: [Then follows an exact copy of the description of the records and documents shown in the subpœna duces tecum, which the witnesses were required to produce.]"

The order then continued as follows:

"Qualifying and explaining items 3 and 11 of the records, maps, and instruments above enumerated, it is the intention of the court to require the Texas Company, its agents, servants, and employés, to produce before said notary public, for deposition purposes, such maps as are described in paragraphs 3 and 11 above, which are and have been, prior to the preparation for the defense of this lawsuit, among the permanent records of the Texas Company; but it is not the intention of the court to require the production of any map or plat, diagram, or drawing that has been specially prepared by the defendant, its agents, servants, and employés, subsequent to the institution of the instant suit, and prepared solely for the purpose of defense to the cause of action herein filed. Counsel of record for the defendant company having appeared in open court and waived the service of a copy of this order upon the representatives of the Texas Company, it is ordered that a copy hereof be delivered to counsel of record for parties plaintiff and a defendant; and it is so ordered."

On January 4, 1926, the Texas Company presented to the district judge a verified bill for injunction to restrain the enforcement of the order of the court and the subpœna, and asking that upon final hearing the injunction be made permanent, the order theretofore made by the trial judge be set aside, and the subpœna duces tecum be declared null and void. The plaintiffs in the case and Renne Allred, Jr., a notary public, and Fred K. Smith, sheriff of Wichita county, in their official capacities, were made parties defendants to the bill for injunction.

The petition set out all of the proceedings theretofore taken, including the issuance of the subpœna, the appearance and answers of the witnesses to the questions propounded, the application made by the plaintiffs to compel the production of the records called for, the order of the court made on said application, as well as the defenses urged before the court to the application. The petition reiterates all the objections and defenses theretofore urged to the application for the order, some of those grounds being amplified in various details, which we will not attempt to enumerate, since we deem the same to be unnecessary in view of our conclusions hereinafter expressed. Copies of all the proceedings theretofore taken, including the subpœna duces tecum, application made by the plaintiffs for the order, the answer thereto filed by the defendant, and the order of the court, were all attached to plaintiffs' petition for injunction and made parts thereof. The petition concludes with a prayer for a writ of

injunction, directed to the plaintiffs, and to the notary and sheriff in their official capacities, restraining them and each of them from enforcing or attempting to enforce the commands of the subpœna, in so far as said subpœna requires the witnesses to produce before the notary public the records, maps, and instruments mentioned in the subpœna, and also restraining plaintiffs, their agents and employés, from enforcing or attempting to enforce the order of the court, theretofore made, requiring the witnesses to produce the documents before the notary public, and requiring plaintiffs and the notary and sheriff, their agents, servants, and employés, "to refrain from punishing or penalizing your plaintiff, its agents, servants, and employés, for failure to comply with said subpœna or said order, until the further order of this court."

The petition for injunction was duly heard, and the prayer for the writ of injunction was denied. From that order the defendant has prosecuted this appeal.

Appellant has filed a voluminous brief, containing a discussion of the propositions advanced, with many citations of authorities in support thereof. Those propositions embrace, substantially, the same contentions as were made in appellant's resistance to the motion of plaintiffs in the case for the order, later made, requiring the witnesses to obey the command of the subpœna to produce the records therein called for; stress being laid on the contention that the order is in violation of the rights guaranteed by the Fourteenth Amendment to the federal Constitution, forbidding the deprivation of citizens of the United States of life, liberty, and property without due process of law, and of the ninth section of the Bill of Rights of the state Constitution, guaranteeing security to the people of the state in their persons, houses, papers, and possessions from all unreasonable seizure or search, and of the nineteenth section of the same Bill of Rights, which provides that no citizen of the state shall be deprived of life, liberty, property, privileges, or immunities, except by the due course of the law of the land, and section 15 of the Bill of Rights, guaranteeing the right of trial by jury.

[1-3] According to the allegations in appellant's bill for injunction, the notary did not attempt to compel the witnesses to produce the records called for in the subpœna. He took no action of that character; he merely propounded the questions and noted the refusal of the witnesses to produce the records, together with their excuses for not so doing. There the matter would have rested, but for the order of court commanding the witnesses to produce before the notary the records sought. It thus appears that appellant's complaint is necessarily based solely upon the invalidity of the order of court. That order of court was an inter-

locutory order, from which no appeal lies. While the present suit is a separate and independent action from any issues involved in the original suit, it is an attempt to review and set aside the order of the trial court upon the same grounds that would be urged in an appeal from that order, if an appeal were allowed by statute. It is well settled that a suit for injunction cannot be maintained merely as a method of prosecuting an appeal from a judgment or order of the court from which no appeal lies. · It is further true that the right of appeal in such cases is not guaranteed by the Constitution. Hudson v. Smith, 133 S. W. 486, 63 Tex. Civ. App. 412; Kruegel v. Williams (Tex. Civ. App.) 158 S. W. 1052; 2 Story, Equity, §§ 1218–1220.

[4] The order of the court was not attacked upon the ground of lack of jurisdiction of the court to make it. The court had jurisdiction of the subject-matter and of the parties. The subject-matter and the parties were the same in both proceedings, except that the sheriff and the notary, made defendants in the bill for injunction, were not defendants in plaintiffs' motion, nor in the original suit; but the sheriff and the notary were not necessary parties to the petition for injunction. It does not appear from the allegations in the bill that they were in any manner interested in the issues involved. They were acting purely in an official capacity, and complainants are in no position to complain of any action they may take in obedience to the order of the court, which is the only action feared by the complainants, until such orders are set aside and annulled, and allegations that they will obey such order show no right of action against them. It cannot, therefore, be said that the order of the court should be enjoined, even though it should be said that it was erroneous for any of the reasons assigned by the appellant. G., H. & S. A. Ry. Co. v. Dowe, 6 S. W. 790, 70 Tex. 1; 2 Pom. Eq. Rem. § 674; 15 R. L. L. 739.

[5] Furthermore, the subject-matter, parties, and issues involved in the application by plaintiffs for the order of the court complained of being the same as those involved in the suit for injunction, the order of court had the effect to debar the suit for injunction under the rules of res adjudicata. Hudson v. Smith, 133 S. W. 486, 63 Tex. Civ. App. 412. The following excerpt from 15 Ruling Case Law, p. 750, is fully supported by authorities there cited:

"Where a court of law and a court of equity have concurrent jurisdiction in regard to a particular defense, a litigant may elect between the remedies, and, failing to defend at law, he may nevertheless obtain relief in equity. But if he presents such defense to a court of law, and judgment is entered against him, he will not be permitted to relitigate in equity the question of the defense as a means of obtain-

ing equitable relief in regard to the judgment. In other words, a defense cannot be set up in equity which has been fully and fairly tried at law, though it may be the opinion of the chancellor that the defense ought to have been sustained at law. For example, if a party pleads the illegality of a consideration in an action at law, and fails, equity will not retry the matter, or grant relief from the judgment, on account of such illegality in the obligation on which it was founded. Similarly a party waives his right to have the question of fraud litigated in a court of chancery, when he has presented it as a defense to an action at law. The reason for the rule under consideration lies in the fact that the decision of the court of law has the effect of res judicata, and the question therein determined cannot be again raised in the suit in equity. Instead of taking cognizance of a case already decided by a court of law a court of equity will respect the judgment of a court of competent jurisdiction already pronounced upon the facts, and will decline to exercise any revisory jurisdiction over its judgment."

[6] The point made by appellant that the order of the court required the unnamed and unidentified employés of appellant to produce the records called for, when such persons were not made parties to the proceedings in any way, is without merit, since appellant has no interest in the protection of such employés in the personal rights guaranteed to them by the Constitution. State v. Cage (Tex. Civ. App.) 176 S. W. 928; Young v. City of Colorado (Tex. Civ. App.) 174 S. W. 986, and authorities there cited.

Appellant had the right to be heard, and was heard, upon the question whether or not the records should be produced before the notary as called for in the subpœna; but that right did not include the further right to object to the testimony of such employés on grounds purely personal to the employés, who may have custody of those records.

Since this suit is a separate and distinct action from the main suit, the order of the trial court, refusing appellant injunctive relief, will be affirmed, for the reasons stated above, without a determination of any of the questions presented as to whether or not the trial judge's order commanding the witnesses to produce the records before the notary, was erroneous.

BUCK, J., not sitting.

### On Motion for Rehearing.

DUNKLIN, J. [7] As pointed out in our opinion on original hearing, the order of court complained of was attacked as void; but we held that it was not void, and that, since it was not void, the injunctive relief prayed for could not be granted. The reason the order was not void was that the court had jurisdiction of the subject-matter and of the parties to the application therefor. The principal attack upon the order was based upon the contention that it was in contravention of provisions of both the state and federal Constitutions. Those Constitutional guaranties were also invoked as a defense to the application made by plaintiffs to compel the production of documentary evidence, and that defense was overruled by the court when the order complained of was entered. Even though it should be held that that ruling was erroneous, because in contravention of provisions of the Constitution, yet the error did not render the order void. It was the law of the case, and binding upon the parties to that proceeding, until set aside on appeal therefrom, and, being an interlocutory order, no appeal lies. State ex rel. City of Columbus v. Mitchell, 31 Ohio St. 592; Corcoran v. Chesapeake, etc., Canal Co., 94 U. S. 741, 24 L. Ed. 190; City of Aurora v. West, 17 Wall. (74 U. S.) 82, 19 L. Ed. 42; Philadelphia v. Ridge Ave. Ry. Co., 21 A. 982, 142 Pa. 484, 24 Am. St. Rep. 512; 34 C. J. 509, 555; Adams v. Fisher, 6 S. W. 772, 75 Tex. 657.

[8] In the motion for rehearing the further contention is stressed that the order complained of was void as to such employés, agents, and servants of appellant as were not made parties to the application for the order, and that, because it was void as to them, it was void as to all parties to the proceeding. The only parties whose interests are to be affected by the main suit, or by the order of court which is sought to be enjoined, are the plaintiffs and the defendant in the main suit. Neither the witnesses McMahon and Clayton nor any other agent, servant, or employé of the appellant, who by the order of court are required to appear as witnesses before the notary taking their depositions and produce the records specified in the order, are in any manner interested in the controversy between plaintiffs and defendant in the suit. Hence they have no interest in the issue as to whether or not plaintiffs are entitled to the relief awarded to them by the order of court which is sought to be enjoined, and therefore they were not necessary parties to plaintiffs' application therefor. The only necessary party defendant to that application was the Texas Company, and, since it is a corporation, obedience to the order must necessarily be accomplished through its proper agents and representatives.

Even though it should be said that the unnamed employés, servants, and agents who are included within the terms of the order were proper parties to the application therefor, yet the order was not void by reason of the fact that they were not made parties to that proceeding. 23 Cyc. 1092; 34 Corpus Juris, 559.

The motion for rehearing is overruled.